UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THERESA ANN ELA,

        Plaintiff,

v.                              Case No:  6:13-cv-491-Orl-28KRS

ORANGE COUNTY SHERIFF'S
OFFICE, KATHLEEN DESTEFANO,
JERRY L. DEMINGS, UNKNOWN
SUPERVISORS OF ORANGE
COUNTY SHERIFF'S OFFICE,
FLORIDA DEPARTMENT OF LAW
ENFORCEMENT, DEPARTMENT OF
HIGHWAY SAFETY AND MOTOR
VEHICLES, GERALD M. BAILEY,
JULIE L. JONES, JOHN DOES 1-30
and JANE DOES 1-30,

        Defendants.

_____

## ORDER

    This case involves claims made by Theresa Ela that Kathleen Destefano[1] improperly accessed Ela's personal information maintained by state agencies.   Ela has sued Destefano, the agencies, and others, alleging violations of the Driver's Privacy Protection Act ("the Act"), 18 U.S.C. §§ 2721-2725, and of Ela's rights under the Constitutions and laws of the United States and the State of Florida.   All named Defendants have moved to dismiss the Complaint on various grounds, including that the Act is unconstitutional.   Although the Act is constitutional, all claims must be dismissed except the claims against Destefano for violation of the Act.

_____

[1] Kathleen Destefano married Theresa Ela's ex-husband and is now known as Kathleen Ela.   (See Compl., Doc. 1).   For clarity, in this Order Kathleen Ela will be referred to as "Destefano."

## I. Background[2]

Through her employment as an Orange County Deputy Sheriff, Destefano had access to the Driver and Vehicle Information Database (DAVID) and the National Crime Information Center/Florida Crime Information Center (NCIC/FCIC).   These databases include personal information pertaining to licensed drivers.   Between January 2010 and September 2011, Destefano accessed these databases nearly 200 times to investigate Theresa Ela, the ex-wife of Destefano's husband.   (Compl., Doc. 1, ¶ 56).   Destefano copied and delivered Ela's personal information to a party opposing Ela in state court litigation.    (Id. ¶ 57).

Upon learning of Destefano's conduct, Ela filed a four-count complaint against Destefano and others.   (Id. ¶¶ 119-56).   In Count I, Ela alleges that all Defendants— Destefano; the Orange County Sheriff's Office ("Sheriff's Office"); Orange County Sheriff Jerry Demings; the Florida Department of Law Enforcement ("Department of Law Enforcement") and its director, Gerald M. Bailey; the Florida Department of Highway Safety and Motor Vehicles ("Department of Motor Vehicles") and its director, Julie L. Jones; and unnamed employees—violated the Act.    In the remaining three counts, Ela claims her civil rights were violated, and she seeks relief pursuant to 42 U.S.C. § 1983. In Count II, Ela alleges that all of the Defendants violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution; Article I, Sections 12 and 23 of the Florida Constitution; and the laws of the United States and Florida.   In Count III, Ela sues the Department of Law Enforcement, the Department of Motor Vehicles, the Sheriff's Office, Bailey, Jones, and Demings, alleging a custom and practice of violating

---

[2] The Background section contains facts as stated in the Complaint and accepted as true for purposes of the motions to dismiss.

Ela's rights and a failure to train employees.    Finally, in Count IV Ela alleges violations of the Fourth and Fourteenth Amendments and the Florida Constitution by the Department of Law Enforcement and the Department of Motor Vehicles and their directors—Bailey and Jones, respectively.

All Defendants have moved to dismiss the Complaint (Docs. 5, 6, 13, 20, & 22), arguing that the Complaint does not state cognizable causes of action and that the Act is unconstitutional.    Ela has filed responses in opposition to the motions to dismiss, (Docs. 49, 39, 50, 54, & 55, respectively), and the United States has intervened to defend the constitutionality of the Act, (see Docs. 76 & 77).    Destefano's Motion to Dismiss Counts I and II (Doc. 13) must be denied in part because the Complaint states a cause of action against Destefano for violating the Act and because the Act is constitutional.    The motions of the other Defendants (Docs. 5, 6, 20, & 22) have merit and must be granted.

## II. Legal Standard

To state a claim for relief, a complaint "must contain . . . a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).    "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).    Facial plausibility requires the plaintiff to plead facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief." Id. at 679.

### III. Count I—Claims Under the Act

In 1994, "[c]oncerned that personal information collected by States in licensing of motor vehicle drivers was being released—even sold—with resulting loss of privacy for many persons, Congress provided federal statutory protection. It enacted the Driver's Privacy Protection Act . . . ." Maracich v. Spear, 133 S. Ct. 2191, 2195 (2013). Subject to specific exceptions, the Act provides that state departments of motor vehicles and their officers, employees, and contractors "shall not knowingly disclose or otherwise make available to any person or entity" personal information "obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a)(1)-(2). Personal information includes data "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address . . . , telephone number, and medical or disability information." Id. § 2725(3). The Act establishes a private right of action against a "person who knowingly obtains, discloses or uses personal information . . . for a purpose not permitted" under the statute. Id. § 2724(a).

Count I alleges that all Defendants violated the Act. Defendants, however, challenge the constitutionality of the Act and argue that Count I fails to state a cause of action. It is well understood that courts should not rule as to the constitutionality of a statute unless doing so is unavoidable. See Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 343-44 (1999). In keeping with this principle, other bases for dismissal [3] asserted by Defendants will be addressed before taking up

---

[3] Some Defendants have argued that they are entitled to a qualified immunity defense. (Defs. Bailey & Jones's Mot. Dismiss, Doc. 6, at 15). I do not address the issue of qualified immunity, however, because it is not necessary to resolve the motions.

Defendants' challenge to the constitutionality of the Act.

### A. Entity Defendants

The state agency Defendants—the Department of Law Enforcement and the Department of Motor Vehicles—move to dismiss Count I on grounds that the Act does not provide for private causes of action against them.  (Doc. 5 at 3).  This motion has merit.  The Act vests in individuals a cause of action against persons who violate the statute, stating: "[a] *person* who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."  18 U.S.C. § 2724(a) (emphasis added).  For purposes of enforcement, the Act defines "person" as meaning "an individual, organization or entity, but does not include a State or agency thereof."  Id. § 2725(2).  Accordingly, Ela has no cause of action under the Act against the Department of Law Enforcement or the Department of Motor Vehicles—agencies of the State—and Count I against them will be dismissed.

The claim against the Sheriff's Office is also dismissed.   The Sheriff's Office is not a legal entity.   See Evans v. Monroe Cnty. Sheriff's Dep't, 148 F. App'x 902, 903 (11th Cir. 2005) ("[T]he Sheriff's Department was not a legal entity subject to suit.").[4]

---

[4] Despite this language from the Eleventh Circuit, courts in this circuit have disagreed as to whether a suit against a sheriff sued in his official capacity is a suit against the county or the sheriff's office.  Compare Taylor v. Dean, No. 5:05-cv-397-Oc-10GRJ, 2006 WL 4756452, at *3 (M.D. Fla. Oct. 25, 2006) ("While the Marion County Sheriff's Office is not an entity that can be sued under Florida law, court's [sic] have treated a suit against the sheriff, in his official capacity, as a suit against the county itself."), with Gray v. Kohl, No. 07-10024-CIV, 2007 WL 3520119, at *7 (S.D. Fla. Nov. 14, 2007) ("[S]uit against [an official from the sheriff's office in his or her official capacity] is the equivalent of a suit directly against the Monroe County Sheriff's Office.").  However, I follow the language in Evans that a sheriff's department is not an appropriate entity for suit.

### B. Adequacy of Pleading

Ela asserts in Count I that Destefano violated the Act by obtaining Ela's personal information from the databases and disclosing that information in a way not authorized by the Act.   As to Destefano, the allegations are straightforward, and Destefano does not challenge this assertion except to argue that the Act is unconstitutional.[5]   The assertions that Bailey, Jones, Demings, and others violated the Act are, however, tenuous.

It is unclear throughout the Complaint and in Count I whether Ela is seeking relief from Jones, Bailey, and Demings in their individual or official capacities.   Ela at times appears to seek relief from these defendants in their individual capacities: she states that all of the individual defendants were acting in their individual capacities and that she sues them all individually.   (Doc. 1 at 1-6).   On the other hand, Ela states that they were acting as heads of their agencies, (id. ¶¶ 10, 13, & 9), and her allegations generally relate to their roles as supervisors, (see, e.g., id. ¶¶ 94, 95, & 98).

To the extent that she sues Jones and Bailey in their official capacities, she is unable to state a cause of action against them for the same reason she cannot state a cause of action against the state agencies under the Act.   "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)).   To the extent that Ela sues Jones and Bailey in their individual capacities, she still fails to state a cause of action because

---

[5] Contrary to the argument in Destefano's motion to dismiss, Ela also has sufficiently met the mens rea requirement for pleading punitive damages pursuant to § 2724 by alleging that Destefano acted with "willful or reckless disregard of the law." (See Doc. 1 ¶ 58 (stating that DeStefano had unlawfully accessed Ela's personal information 191 times)). Additionally, Destefano has not shown why injunctive relief could not be granted in this case, and her argument for dismissing the Complaint to the extent Ela seeks injunctive relief is rejected.

she does not allege actions by Jones and Bailey themselves that are a violation of the Act.[6]   Ela also fails to allege any basis for vicarious liability under the doctrine of respondeat superior in her Complaint or Responses, and I do not address that doctrine here.   For these reasons, Count I must be dismissed, insofar as it is brought against Jones and Bailey.

Unlike the claims against Jones and Bailey, Ela's claims against Demings do sometimes allege conduct actually performed by Demings, both regarding his own actions and in his supervision of subordinates.   (See Doc. 1 ¶¶ 46, 48, 49, & 102).   However, for the most part, the conduct attributed to Demings and those employees answering to him amounts to no more than claims of negligence.   For example, Ela alleges that Demings was "reckless" or "grossly negligent in supervising [his] subordinates."   (Id. ¶¶ 48, 49).   Because the Act does not establish a private cause of action for negligence, these claims are not viable.[7]   See Senne v. Vill. of Palatine, 695 F.3d 597, 603 (7th Cir. 2012) (stating that "[v]oluntary action" satisfies the "knowing" requirement of the Act); see also Welch v. Theodorides-Bustle, 753 F. Supp. 2d 1223, 1226 (N.D. Fla. 2010) ("As this language makes clear, a defendant who had a role in improperly disclosing a plaintiff's personal information is not necessarily liable to the plaintiff. The Act imposes liability only on a defendant who 'knowingly' discloses information for an impermissible 'purpose.' So

---

[6] Ela alleges only that the "Does" of both agencies acted "under the direction of" Jones and Bailey to violate the Act. (See, e.g., Doc. 1 ¶¶ 29, 94, & 102). She fails to allege any direct action by either Defendant.

[7] The Second Circuit has read the Act as establishing a duty of reasonable care on certain parties who disclose information.   Gordon v. Softech Int'l, Inc., 726 F.3d 42, 53 (2d Cir. 2013) ("[T]he [Act] imposes a duty on resellers to exercise reasonable care in responding to requests for personal information drawn from motor vehicle records."). Gordon is distinguishable from the present case, however, because it focuses on resellers who disclosed information to others, whereas Ela alleges a failure to prevent improper disclosure within the context of law enforcement agencies performing necessary functions with the information.

liability turns on what a defendant knows and on the defendant's purpose.").

In addition, the conduct alleged against Demings and the unknown Defendants is vague. Ela alleges that those Defendants "knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using Theresa Ann Ela's private personal information by the Defendant, Kathleen Destefano." (Doc. 1 ¶ 102).   In conclusory fashion, she lists several different actions (e.g., directing, ratifying, approving) allegedly committed by those Defendants, many of whom are not named.    There is not an allegation of specific facts against any particular law enforcement officers but merely an offering of labels and conclusions.   Ela has not set forth sufficient factual matter to state a claim for relief that is plausible on its face and has thus failed to meet the pleading standards of Federal Rule of Civil Procedure 8. Count I must be dismissed against all Defendants except Destefano.

### C. Constitutionality of the Act

Because Ela has stated a cause of action under the Act against Destefano, it is necessary to consider Destefano's argument that the Act is unconstitutional as applied to the facts of the case.   She insists that the claims under the Act must be dismissed because Congress lacks authority under the Commerce Clause[8] to regulate her conduct that did not include an economic event.   Her argument fails.[9]

Over the past twenty years, the Supreme Court has repeatedly reminded Congress that its power to legislate under the Commerce Clause is limited.   See, e.g., United States v. Lopez, 514 U.S. 549 (1995); United States v. Morrison, 529 U.S. 598 (2000);

---

[8] U.S. Const. art. I, § 8, cl. 3.
[9] Other Defendants allege that the Act as applied to the facts of this case violates the Tenth Amendment.   Destefano does not raise this argument, however, and I thus do not address any Tenth Amendment arguments.

and, most recently, Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566 (2012).   In National Federation of Independent Business, the Court summarily described its precedents as meaning that Congress had authority to "regulate 'the channels of interstate commerce,' 'persons or things in interstate commerce,' and 'those activities that substantially affect interstate commerce.'"   Id. at 2578 (quoting Morrison, 529 U.S. at 609).   The Court noted that "[t]he power over activities that substantially affect interstate commerce can be expansive," even extending to "authorize federal regulation of . . . seemingly local matters." Id.

The United States Supreme Court expressly found the Act constitutional in Reno v. Condon, 528 U.S. 141 (2000), rejecting South Carolina's argument that the Act failed to pass constitutional muster under the Tenth Amendment.   The Reno Court held that the Act did not undermine State sovereignty, id. at 143, explaining that the Act only "regulates the States as the owners of data bases,"  id. at 151.   The Act "does not require [States] to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals." Id.

In reaching its holding that the Act did not violate the Tenth Amendment, the Reno Court addressed the three categories of activities that Congress is authorized to regulate under the Commerce Clause outlined in United States v. Lopez, 514 U.S. 549, 558-59 (1995).   The Court determined that enactment of the Act was a legitimate exercise of Congressional power under the Commerce Clause, explaining that personal information as defined by the Act is "a thing in interstate commerce" and subject to Congressional regulation under the second Lopez category.   Reno, 528 U.S. at 148.   Historically, the information was sold by States and "used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce to contact drivers with customized

solicitations.   The information is also used in the stream of interstate commerce by various public and private entities for matters relating to interstate motoring."[10]   Id.

Destefano acknowledges the ruling in Reno but contends that it is not enough that the personal information be "a thing in commerce."   To pass constitutional scrutiny, she argues that the information must actually be placed into interstate commerce.   (Doc. 13 at 7-9).   Because the Complaint does not allege that she placed the information into channels of interstate commerce, Destefano maintains that the claim that she violated the Act is constitutionally infirm.   In other words, she takes the position that her conduct is exempt from enforcement under the Act on the grounds that Ela's personal information was allegedly accessed and used locally for personal reasons rather than sold or directly placed into channels of interstate commerce.

There is, however, no such exemption, and Destefano's efforts to distinguish Reno fall short. The Supreme Court was clear in explaining why the personal information protected by the Act constitutes a thing in interstate commerce.   One reason for defining the information as "a thing in interstate commerce" is that the States had established a history of selling the information to vendors, marketers, and manufacturers.   Reno, 528 U.S. at 148.   But, another reason that it is a thing in interstate commerce is that the information is "used in the stream of interstate commerce by various public and private entities for matters related to interstate motoring."   Id.   While the primary focus of

---

[10] Because it found there were other bases for regulating personal information under the Lopez categories, the Supreme Court in Reno did not decide whether there was a basis for the legislation under the third Lopez category, which turns on whether the "intrastate activities in gathering, maintaining, and distributing drivers' personal information have a sufficiently substantial impact on interstate commerce to create a constitutional base for federal legislation." Reno, 528 U.S. at 148-49.  Similarly, the question of whether the intrastate activities associated with the operation of the DAVID, FCIC, and NCIC databases have a substantial impact on interstate commerce was not raised in the present case and is not addressed here.

Congress in enacting the Act may have been the protection of drivers from customized solicitation by those who purchase personal information from states, the Act more generally provides that officials "shall not knowingly disclose or otherwise make available [personal information] to any person or entity."   18 U.S.C. § 2721(a).   It is understood that "'[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class.'" Gonzalez v. Raich, 545 U.S. 1, 23 (2005) (alteration in original) (quoting Perez v. United States, 402 U.S. 146, 154 (1971)).   The alleged activity is within the reach of federal commerce power, and it is prohibited by the statute.

Destefano's argument that the identity of personal information as a thing in interstate commerce is not alone a sufficient basis for regulation under the Commerce Clause is also at odds with Lopez, which refers to the three categories of activities subject to Commerce Clause regulation as alternative bases for federal regulation. Lopez, 514 U.S. at 558-59.   Recent Supreme Court cases have cited the Lopez categories without suggesting that any one category is not by itself a sufficient basis. See, e.g., Morrison, 529 U.S. at 608-09.   Notably, the Lopez Court stated that "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." Lopez, 514 U.S. at 558. Acceptance of Destefano's argument would mean that when personal information is delivered locally, it loses its identity as a thing in interstate commerce.   Her argument is contrary to Lopez and is unavailing.

For these reasons, the Act is not a violation of the Commerce Clause.   Ela's claim against Destefano under the Act survives the motion to dismiss.

**IV. Counts II-IV—§ 1983 claims**

11

Federal law provides a cause of action to remedy the deprivation of the "rights, privileges, or immunities secured by the Constitution and laws."   42 U.S.C. § 1983. Counts II, III, and IV are brought pursuant to § 1983.   Count II is against all Defendants and alleges that "obtaining an individual's driver's license information without a legitimate purpose constitutes an illegal search under the meaning of the United State [sic] Constitution's Fourth and Fourteenth Amendments."   (Doc. 1 ¶ 109).   This count also alleges that Defendants' actions violated the laws of the United States, the Florida Constitution, and the laws of Florida.   Count III is against the agencies, Bailey, Jones, and Demings and alleges a custom and practice of unconstitutional conduct and a failure to train employees.   Finally, like Count II, Count IV alleges violations of the Fourth and Fourteenth Amendments and the Florida Constitution; Ela claims these violations occurred because the state agencies, Bailey, and Jones "failed to prevent unauthorized access to the databases."   (Doc. 1 ¶ 145).

### A. Alleged Violation of the State Constitution and Laws

In Counts II and IV, Ela seeks relief under § 1983 for violation of the Florida Constitution Article 1, Sections 12 and 23 and the laws of the State of Florida.[11]   These claims are due to be dismissed because § 1983 is not an appropriate means of enforcing state-created rights. The statute was enacted only to provide remedies for deprivation of "a person's rights, privileges or immunities secured by the Constitution or laws of the United States." Capogrosso v. Supreme Court of New Jersey, 588 F.3d 180, 186 (3d Cir. 2009) (quotation omitted).   Claims of violations of state constitutions or laws are not cognizable under § 1983.   See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); see also Glenn v. Brumby, 663 F.3d 1312, 1315 (11th Cir. 2011).

---

[11] Ela fails to identify what Florida laws she claims were violated.

### B. Entity and State Official Defendants

As stated above, the Sheriff's Office is not a legal entity that is subject to suit, so the § 1983 claims in Counts II and III naming it as a defendant must be dismissed. Additionally, states and their agencies cannot be sued for damages under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989).   Thus, the § 1983 claims for damages in Counts II, III, and IV against the Department of Law Enforcement and the Department of Motor Vehicles must be dismissed.

Regarding claims against Jones and Bailey, as discussed above Ela has failed to state causes of action for violations of her rights.   To the extent the Complaint claims that these officials acted in their individual capacities only, (see Doc. 1 at 4-5), Ela has failed to allege in the Complaint that these Defendants acted under color of state law in accordance with § 1983, see Parker v. Graves, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam).   To the extent these Defendants were sued in their official capacities, the action is treated as a suit against the state agencies themselves.   Graham, 473 U.S. at 165. For these reasons, the § 1983 claims for damages against Jones and Bailey in Counts II, III, and IV must also be dismissed.[12]   Will, 491 U.S. at 71.

### C. Alleged Fourth and Fourteenth Amendment Violations

One of Ela's claimed bases for § 1983 liability in Counts II and IV is that the Act creates discrete privacy rights in her personal information and that accessing that information violates her Fourth Amendment rights.   Defendants argue that violation of the limited privacy rights legislatively created by enactment of the Act does not constitute

---

[12] State officials sued in their official capacities may, however, be sued for prospective injunctive relief.   Will, 491 U.S. at 71 n.10.   Had Ela sufficiently alleged a basis for § 1983 liability, she would be able to sue Jones and Bailey in their official capacities for injunctive relief.   As discussed below, however, she did not.

a constitutional violation because Ela did not have a reasonable expectation of privacy in information that was collected and maintained by the state.   I agree.

The text of the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. Const. amend. IV. It protects people from the power of the Government. See United States v. Place, 462 U.S. 696, 706-07 (1983). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."[13]   Kyllo v. United States, 533 U.S. 27, 33 (2001); see also Smith v. Maryland, 442 U.S. 735, 740 (1979).   Ela is claiming that those operating under color of state law searched information that she had already turned over to the state as a requirement for issuance of her driver's license.   While unauthorized access and distribution of personal information violates privacy rights created by the Act, such conduct does not violate the Fourth Amendment.

The state did not acquire the information as a result of a search of Ela's papers and effects but because she gave it to them in return for issuance of her driver's license. The state added the information to its databases.   The databases were created and are maintained for legitimate purposes.   It was to be expected that this information would be appropriately accessed by those approved for database certification.   Under these circumstances, Ela did not have a reasonable expectation of privacy in that information, and there is no Fourth Amendment violation. See Rasmusson v. Chisago Cnty., No. 12-cv-0632, 2014 WL 107067, at *8 (D. Minn. Jan. 10, 2014).

---

[13] Defendants do not address whether the information in question was "papers" or "effects" or whether Defendants' actions could otherwise be considered a search under the Fourth Amendment.   Defendants do argue that Ela did not have a reasonable expectation of privacy in the information, so I address this issue alone.

Ela also argues that Defendants violated her privacy rights under the Fourteenth Amendment's Due Process Clause.   The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   Ela argues that "the [Act] creates a protectable interest in [her] personal information," which constitutes a Fourteenth Amendment violation. (Doc. 55 at 7). Eleventh Circuit precedent forecloses this argument.   There is no such right to privacy in the information protected by the Act.   Collier v. Dickinson, 477 F.3d 1306, 1308 (11th Cir. 2007); see also Pryor v. Reno, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999), rev'd on other grounds, 528 U.S. 1111 (2000) ("[A]n individual does not have a reasonable expectation that the information is confidential. Thus, there is no constitutional right to privacy in motor vehicle record information which the [Act] enforces.").   Because there is no Fourth or Fourteenth Amendment violation, Ela cannot obtain relief in Counts II or IV under §1983 based on constitutional violations.

### D. Alleged Violation of the Act

A violation of the Act is a valid basis for suit under § 1983 in this circuit.   Collier, 477 F.3d at 1311.   In some of her Responses to Defendants' motions to dismiss, Ela argues that her Complaint seeks relief under § 1983 based on these alleged statutory violations.   (See Docs. 39 at 26 & 55 at 4).   The question that remains is whether Ela has sufficiently alleged violations of the Act that can be a basis for § 1983 liability.

Although Ela does not clearly distinguish the rights she alleges were established by the Act from those guaranteed by the Fourth and Fourteenth Amendments,[14] she

---

[14] For example, Ela often contends that the Act creates a privacy right and that for this reason a violation of the Act is a violation of the Fourth and Fourteenth Amendments. (See, e.g., Doc. 50 at 9 ("[B]ecause the [Act] creates a privacy right, [Ela] had an

sufficiently pleads a claim for violation of her rights under the Act in Count II.   As noted above, Ela failed to sufficiently allege a violation of the Act against all of the Defendants except for Destefano.   Without an underlying violation of federal rights, there can be no § 1983 liability.   Thus, the only claim in Count II that survives is the claim against Destefano, and this claim survives only to the extent that it seeks relief for violations of the Act. Because Count IV did not name Destefano as a Defendant, and because Ela has failed to allege a basis to hold any Defendants named in Count IV liable under § 1983, Count IV must be dismissed in its entirety.

### E. Custom or Practice and Failure to Train

Count III alleges a custom or practice and a failure to train against the Sheriff's Office, the Department of Law Enforcement, the Department of Motor Vehicles, Jones, Bailey, and Demings. For the reasons noted above, Ela has failed to state a § 1983 claim against the entity Defendants, Bailey, and Jones.

Ela also fails to state a basis for liability against Demings under this theory. To establish § 1983 liability against a municipality based on a custom or practice, a plaintiff must allege that the custom caused the violation of the plaintiff's rights.[15]   McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).   The same requirement applies to a failure to train claim.   Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).   Ela's allegations throughout Count III regarding the custom or practice at issue and the alleged lack of training are vague and general.   Even if Ela has alleged a custom or a failure to

---

expectation of privacy in the information that was accessed by Destefano in the database which resulted in a violation of her Fourth and Fourteenth Amendment Rights.").

[15] It is unclear from the face of the Complaint whether Ela seeks municipal liability against Demings in his official capacity or supervisory liability against Demings in his individual capacity. I treat her claim in Count III against Demings as one of municipal liability because her Response to Demings's motion to dismiss only addresses municipal liability. (Doc. 55 at 13-15).

train, she has not sufficiently alleged in Count III that such a custom or practice caused a violation of her rights under the Act.   Ela only states that her alleged damages are "a direct and proximate result of the acts and omissions of the above-named agency Defendants." (Doc. 1 ¶ 137).   Ela states no facts to show that the alleged violations in Count III caused any deprivations of her rights and instead offers only labels and conclusions, failing to meet the pleading standards of Federal Rule of Civil Procedure 8 and Iqbal.   For this reason, Count III must be dismissed for failure to state a claim.

## V. Conclusion

Ela has sufficiently alleged a claim against Destefano under Counts I and II, but for various reasons she has failed to state a claim against the other Defendants. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.     Defendant Kathleen Destefano's Motion to Dismiss Counts I and II, and to Strike Portions of the Plaintiff's Complaint (Doc. 13) is **GRANTED IN PART and DENIED IN PART**.   The motion to dismiss is **granted** to the extent it seeks dismissal of Count II based on alleged constitutional violations and is otherwise **denied**.[16]

2.     Defendants' remaining Motions to Dismiss (Docs. 5, 6, 20, & 22) are **GRANTED**. The Complaint is **DISMISSED WITH PREJUDICE** as to the Orange County Sheriff's Office, the Florida Department of Law Enforcement, and the Department of Highway Safety and Motor Vehicles, and as to any claims alleging a violation of the United States Constitution or the Florida Constitution or laws. The Complaint is **DISMISSED WITHOUT PREJUDICE** as to Sheriff Jerry L. Demings, Unknown Supervisors of the Orange County Sheriff's Office, Gerald M. Bailey, Julie L. Jones, and John and Jane Does (1-30).

---

[16] Destefano's motion to strike will be addressed in a separate order.

3.    Ela may, in good faith, file an amended complaint consistent with this order on or before **February 18, 2014.** Failure to file an amended complaint by this deadline will result in dismissal of Ela's claims against the dismissed Defendants with prejudice.

**DONE** and **ORDERED** in Orlando, Florida on January 29, 2014.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record