UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THERESA ANN ELA,

        Plaintiff,

v.                                                      Case No:  6:13-cv-491-Orl-28KRS

KATHLEEN DESTEFANO, JERRY L.
DEMINGS, JOHN DOES 1-30, JANE
DOES 1-30 and ORANGE COUNTY,
SHERIFF DEPARTMENT,

        Defendants.

---

### ORDER

The facts of this case once again prove that "among human beings jealousy ranks distinctly as a weakness."[1]  Defendant Kathleen Destefano is an Orange County deputy sheriff and is married to Dennis Ela, also an Orange County deputy sheriff.  But, before marrying Destefano, Dennis Ela was married to Theresa Ann Ela, Plaintiff in this case.  Apart from jealousy, Destefano's conduct is inexplicable.  Knowing it to be illegal and in violation of the Sheriff's policy, Destefano used her authority as a deputy sheriff to access Plaintiff's personal information contained in law enforcement databases.  Upon discovery of this conduct, Plaintiff sued Destefano in her individual capacity under the Driver's Privacy Protection Act[2] ("the DPPA") and 42 U.S.C. § 1983 and sued Sheriff Jerry Demings ("the Sheriff") in his official capacity under § 1983.  (Am. Compl., Doc. 82).  Before trial and during trial, Destefano admitted to illegally accessing Plaintiff's personal information.  At the conclusion of the trial, the jury determined that Destefano did so 101 times.  (Jury

---

[1]  Mark Twain, <u>Letters from the Earth</u> (Bernard DeVoto ed., Harper & Row 1962).
[2]  18 U.S.C. §§ 2721–2725.

Verdict, Doc. 180 at 1).  But, the jury also found that Plaintiff suffered no damages from Destefano's conduct.  Id.  This Order explains the Rule 50(a) rulings[3] made during the trial and addresses remaining post-trial issues, including how much, if any, liquidated damages, attorney's fees, and costs should be awarded.

## I.    Background

Central to this litigation is the DPPA.  Congress enacted the DPPA in reaction to the ability of wrongdoers to easily use and distribute drivers' personal information in furtherance of criminal conduct and marketing schemes.  Schmidt v. Multimedia Holdings Corp., 361 F. Supp. 2d 1346, 1354 (M.D. Fla. 2004), abrogated on other grounds by Kehoe v. Fid. Fed. Bank & Tr., 421 F.3d 1209, 1212 (11th Cir. 2005).  In determining remedies available to drivers whose personal information is compromised, "Congress clearly contemplated that in most cases, a defendant who obtained motor vehicle information would put it to some use." Pichler v. UNITE, 542 F.3d 380, 393 (3d Cir. 2008).

In her capacity as an officer with the Orange County Sheriff's Office, Destefano had access to databases used by law enforcement agencies, including the Driver and Vehicle Information Database ("DAVID"), the Florida Crime Information Center database ("FCIC"), and the National Crime Information Center database ("NCIC").  These databases contain information about individuals, including photographs, addresses, vehicle information, and emergency contacts.  Destefano admitted that she viewed Plaintiff's personal information on the databases without a legitimate law enforcement purpose many times from January 2010 through November 2011, almost always using DAVID to do so.

---

[3] Federal Rule of Civil Procedure 50.

Plaintiff first learned of Destefano's actions when she made a public records request with the Florida Department of Law Enforcement in late 2011.  At trial, Destefano was contrite.  She admitted she had "no good explanation" for accessing Plaintiff's personal information, that "it was a mistake," and that she was "sorry."  She further admitted that she did not have a legitimate law enforcement purpose for accessing the information.  As a result of her conduct, the Sheriff suspended Destefano for sixty hours without pay and placed her on disciplinary probation for six months.  As additional punishment, the Sheriff prohibited Destefano from driving a patrol car to and from her home and from participating in off-duty private employment ordinarily available to Sheriff's deputies.

In her Amended Complaint, Plaintiff sued Destefano under the DPPA (Count I) and 42 U.S.C. § 1983 (Count II); the Sheriff under § 1983 for failure to supervise and train its employees on the proper use of DAVID (Count III); and Orange County, Sheriff Department under § 1983 (Count IV) and the DPPA (Count V).  (Am. Compl., Doc. 82).[4]  The case proceeded to trial on Counts I, II, and III.

At the conclusion of Plaintiff's case-in-chief, each party moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  The Sheriff moved for judgment as to Plaintiff's § 1983 claim against him, and Plaintiff and Destefano both moved for judgment as to the DPPA and § 1983 claims against Destefano.  Ultimately, I granted

---

[4] The original Complaint, (Doc. 1), brought claims against numerous other defendants along with Destefano and the Sheriff.  After the initial Complaint was dismissed, (see Order, Doc. 80), Plaintiff filed the Amended Complaint naming only Destefano, the Sheriff, and Orange County, Sheriff Department as Defendants.  As noted previously in this case, the entity "Orange County, Sheriff Department" does not exist.  (Order, Doc. 116, at 2; Order, Doc. 139, at 3 n.7).

Plaintiff's motion as to the DPPA and §1983 claims against Destefano and granted the Sheriff's motion as to the § 1983 claim against him, ending his participation in the case.

Before the case was submitted to the jury on the remaining claims against Destefano, Plaintiff agreed to seek damages only under the DPPA and not under §1983. After the trial, Plaintiff and Destefano filed memoranda addressing how much liquidated damages, if any, should be awarded under the DPPA. (Docs. 184 & 185). Plaintiff then filed a motion for an award of costs and attorney's fees under the DPPA and § 1983 (Doc. 190), to which Defendant filed a response, (Doc. 197). The Sheriff also filed a motion to recover his costs (Doc. 196), to which Plaintiff responded, (Doc. 198).

## II.      Judgment as a Matter of Law

## A.      Standard

Federal Rule of Civil Procedure 50(a) governs motions for judgment as a matter of law. Such a motion may be granted against a party "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a). But, entry of judgment as a matter of law is appropriate "only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Action Marine, Inc. v. Cont'l Carbon Inc., 481 F.3d 1302, 1309 (11th Cir. 2007) (citation omitted). In considering Rule 50(a) motions, a court must review all evidence in the record and draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). Even under this generous standard, the nonmoving party is

obligated to come forward with some evidence indicating that reasonable jurors could reach different verdicts. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006).

### B.    The DPPA and Section 1983 Claims Against Destefano

The DPPA is enforceable under its own terms, but it also creates a statutory right to privacy that is enforceable under § 1983. See Collier v. Dickinson, 477 F.3d 1306, 1309–10 (11th Cir. 2007).   It generally provides that except when carrying out an official governmental or law enforcement function "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record . . . shall be liable to the individual to whom the information pertains."   18 U.S.C. §§ 2721(b), 2724(a).   To "obtain" personal information under the DPPA, a defendant need only access and observe the data. McDonough v. Anoka Cty., 799 F.3d 931, 944 (8th Cir. 2015).   Also, each "access" of a person's personal information is a separate "obtainment" and thus an additional violation of the DPPA. See Rollins v. City of Albert Lea, 79 F. Supp. 3d 946, 974 (D. Minn. 2014). Accordingly, Destefano violated the DPPA each time she accessed Plaintiff's personal information, even when the accesses occurred in close succession to one another. Id.

In this case, the unrefuted testimony elicited during trial establishes that Destefano violated the DPPA and Plaintiff's statutory right to privacy.   Destefano admitted that while she was on duty as a law enforcement officer she accessed driver's license databases to view Plaintiff's personal information.   Except for one instance where Destefano claimed to view Plaintiff's information for a law enforcement purpose—an instance about which she could recall no details—Destefano testified that she viewed the data for an improper

5

purpose.  Based on this testimony, Destefano violated the DPPA and Plaintiff's statutory right to privacy as a matter of law.

### C.    Section 1983 Claim Against the Sheriff

In Count III, Plaintiff attempted to hold the Sheriff accountable in his official capacity for Destefano's conduct under § 1983 based on inadequate training or supervision.  In doing so, Plaintiff could not rely on the doctrine of respondeat superior.  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  Instead, a municipality may only be liable under § 1983 if its policy directly causes a violation.  Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, 637 F.3d 1178, 1187 (11th Cir. 2011).  Plaintiff did not claim or prove the Sheriff's policy on its face violated federal law or that it directed its employees to do so; thus, the only question is whether Plaintiff presented sufficient evidence that would allow the jury to conclude that there was a direct causal connection between the Sheriff's policy and the alleged violation.  Id.

To prove that the Sheriffs' office caused a violation, Plaintiff must show that the Sheriff had in place a policy or custom that amounted to a deliberate indifference to Plaintiff's rights.  Id. at 1189.  This requires evidence that the Sheriff had notice of a need to train or supervise his employees.  Id.  The notice requirement can be satisfied by a pattern of similar constitutional violations by untrained employees or through a single prior incident.  Id.  In some cases, even without a prior incident it may be so obvious that without training, drivers' rights under the DPPA would be violated.  Id.  Plaintiff must also establish that, once the Sheriff had notice of a violation, he "made a deliberate choice not to train his employees."  Id. (internal quotation and citation omitted).  In this case, Plaintiff utterly failed to meet this rigorous standard.

Plaintiff did not present evidence of a single prior violation of the DPPA by a Sheriff's employee, let alone evidence upon which a reasonable jury could conclude that misuse of law enforcement databases was so "widespread" that the Sheriff was on notice of the need to correct it.[5]  To be widespread, the violation would have to be "'obvious, flagrant, rampant and of continued duration.'"  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1294 (11th Cir. 2004) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).[6]

One of the Sheriff's employees testified that there may have been one or two investigations per year into instances of improper use of DAVID, but he could not recall the specifics of a single such investigation, nor could he identify a single violation of the DPPA on the part of Sheriff's employees.  If indeed such investigations did occur, it is entirely possible that they resulted in findings of "no violation."  The testimony of Toni Dow supports the conclusion that there were no violations.  Ms. Dow was the terminal agency coordinator and in charge of DAVID user management during the relevant time period.  Ms. Dow testified that she was unaware of any Sheriff's employee misusing the DAVID system. There is no evidence in the record to the contrary.

Even if Plaintiff had satisfied the notice requirement, there is no evidence that the Sheriff made a deliberate choice not to train or supervise his employees.  See Am. Fed'n of Labor, 637 F.3d at 1187.  In fact, the evidence shows just the opposite—that the Sheriff

---

[5] The testimony showed there was but a single identifiable misuse of DAVID, and that conduct occurred *after* Destefano's misuse of DAVID had already begun. (Pl.'s Ex. 15(B)).  That lone instance of misuse was evidenced by a complaint filed against Deputy Sheriff Rafael Cruz with the Sheriff's Professional Standards Section alleging that Mr. Cruz misused the DAVID and FCIC/NCIC systems.  (Id.).  That complaint was received at the earliest on June 9, 2010—six months *after* Destefano first accessed Plaintiff's private information on January 2, 2010.  (Pl.'s Ex. 3).

[6] Brown cites the "widespread abuse" standard in the context of supervisory liability, but Holloman notes that municipal liability is analogous.  See Holloman, 470 F.3d at 1294.

ensured that his employees understood that the databases were to be used only for law enforcement purposes.  As a condition for use of DAVID, deputies were required to sign an acknowledgment of the Memorandum of Understanding[7] making it clear that DAVID was to be used only for official law enforcement purposes.  The acknowledgment also put deputies on notice that unauthorized use could result in criminal and civil liability.  It included the following provisions:

> Queries should be made for criminal justice purposes only.  Queries made for personal reasons should be avoided and may be deemed as [sic] misuse of the system.  This includes coworkers, relatives, celebrities, and other personal acquaintances.

> By signing below you acknowledge that you understand the confidential nature of the information acquired through the use of [DAVID].  You acknowledge the criminal sanctions specified in state law for unauthorized use of the data.  This confidentiality is in accordance with . . . the [DPPA].  Any person who willfully and knowingly violates any provisions of this section is guilty of a misdemeanor of the first degree . . . . In addition, any person who knowingly discloses any information in violation of the [DPPA] may be subject to criminal sanctions and civil liability.

(Pl.'s Ex. 3 at 37 (emphasis omitted)).[8]  The Memorandum itself further contained an attachment listing every exception from the DPPA.  (Pl.'s Ex. 14 at 8).  Destefano signed at least one acknowledgment form during the time period at issue in this case.  (Pl.'s Ex. 3 at 37).

Additionally, deputies were reminded each time they accessed the DAVID database that their use was authorized only for law enforcement purposes.  Both the current and former terminal agency coordinators, Anne Howard and Ms. Dow, respectively, testified

---

[7] The Sheriff executes a Memorandum of Understanding with the Department of Highway Safety and Motor Vehicles—the provider of DAVID—every three years, setting forth the rules and regulations for the Sheriff's employees' access to DAVID.

[8] The cited page numbers on this exhibit refer to the page numbers of the Sheriff's interoffice memo contained within the exhibit.

that before each separate access of DAVID, officers were required to enter through the criminal justice information system portal, which prompted the user to agree to use the database solely for law enforcement purposes. If an officer did not register agreement, he or she was denied access to the system.[9] The objective of these training efforts was met— Destefano unequivocally testified that each time she accessed Plaintiff's personal information she knew she was misusing DAVID in violation of the Sheriff's policy, but she did so anyway.

It is difficult to imagine what else the Sheriff might have done to prevent Destefano from viewing Plaintiff's personal information in violation of the DPPA.[10] Additional supervision would have been hugely expensive and likely ineffective. Ms. Dow testified that technically there was no way to discern whether a search query made by an officer was for a lawful or unlawful purpose. Other than having a supervisor look over the shoulder of each officer as they made their searches, the only way the Sheriff could know of DAVID misuse was to observe and track every DAVID transaction made by every DAVID user to detect suspicious searching trends. As the Sheriff oversees 1,254 active DAVID users, such a task would be unreasonable.

---

[9] In addition to the above precautions, the Sheriff required each deputy who used the FCIC and NCIC databases to take a robust training course given by a third party. (See Pl.'s Ex. 3 at 38). Ms. Howard testified that the FCIC and NCIC courses required officers to pass a 50-question test. Destefano took the FCIC and NCIC training class on July 22, 2011, at the Criminal Justice Institute at Valencia College. (Id.)

[10] Plaintiff faults the Sheriff's failure to have a formal training program for his deputies on the use of DAVID. But this makes little sense. Training was given and it was effective. It is unclear what else could this theoretical training have included regarding the use of DAVID, other than formally advising officers that its use was restricted to official law enforcement business and that unofficial use could result in civil and criminal liability?

In sum, Plaintiff failed to present evidence upon which a reasonable jury could infer that the Sheriff had a policy indifferent to rights established by the DPPA. Therefore, as a matter of law, the Sheriff is not liable to Plaintiff under §1983.

### D.  Vicarious Liability under the DPPA against the Sheriff

During oral argument, Plaintiff made a last-ditch argument that the Sheriff should not be dismissed from the case because he could be held vicariously liable under the DPPA. While some courts have held that employers may be held vicariously liable under the DPPA, Plaintiff reluctantly acknowledged that she had not properly alleged vicarious liability against the Sheriff or any other entity that is a party to this case. (See Am. Compl. at 27 (alleging under Count V: "Violation of the [DPPA] (Against Orange County Sheriff Department: Vicarious Liability)") (emphasis omitted); see also Order, Doc. 116, at 2 (denying Plaintiff's motion for default judgment against "Orange County, Sheriff's Department" because such an entity does not exist); Order, Doc. 117, at 1 (denying Plaintiff's motion for leave to file a second amended complaint—for failing to show good cause—to "properly name Sheriff of Orange County, Florida as a defendant in her claim for vicarious liability")). The Sheriff was properly dismissed from the case.

### III.  Plaintiff's Liquidated Damages under the DPPA

Faced with the jury's finding that she did not suffer actual damages, Plaintiff seeks liquidated damages under the DPPA. The DPPA provides that upon violation a "court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500.00." 18 U.S.C. § 2724(b)(1). Based on this language, Plaintiff seeks $252,500.00 in liquidated damages—$2,500 for each of Destefano's 101 violations.

Plaintiff is correct in insisting that an award of liquidated damages is not contingent on proof of actual damages. Kehoe, 421 F.3d at 1216. But that does not mean that liquidated damages are to be automatically calculated by multiplying the number of times the statute is violated by $2,500. Indeed, Congress's use of the word "may" "suggests that the award of *any* damages is permissive and discretionary." Id. (emphasis added). Although each unauthorized viewing of personal information constitutes a separate violation of the DPPA, Rollins, 79 F. Supp. 3d at 974, a district court has discretion to fashion an award it deems appropriate, taking into account other relief available and requested. Kehoe, 421 F.3d at 1216. In light of this discretion, the imposition of multiple liquidating damages awards for viewing a driver's personal information—one $2500 award for each viewing—is not automatic.[11] Pichler v. UNITE, 457 F. Supp. 2d 524, 530 (E.D. Pa. 2006), reversed in part on other grounds, 542 F.3d 380 (3d Cir. 2008).

In determining an appropriate award of liquidated damages in this case, I considered the totality of the unusual circumstances. Here, Destefano's violation implicates neither of the two purposes of the DPPA—to protect against the use of personal information in the commission of a crime or in a marketing enterprise. Schmidt, 361 F. Supp. 2d at 1354. Destefano made no attempt to utilize Plaintiff's records to communicate in person, by phone, or by mail. In fact, she did not use Plaintiff's data for any purpose, criminal or otherwise, and she did not disclose Plaintiff's private information to a third party. And,

---

[11] Plaintiff's emphasis on the deterrent effect of mandatory cumulative liquidated damages awards is negated by the fact that the DPPA provides for the option of pursuing punitive damages for intentional or malicious conduct. See Exxon Shipping Co. v. Baker, 554 U.S. 471, 492 (2008) ("[Punitive damages] are aimed not at compensation but principally at retribution and deterring harmful conduct."). Although Plaintiff originally sought to recover punitive damages, (see Am. Compl. at 17), she declined to pursue them at trial.

significantly, Plaintiff did not suffer any actual damages as a result of Destefano's actions. However, because Destefano indeed violated the DPPA, she must be held liable for the estimated damages of her violation. Thus, a liquidated damages award of $2,500 is appropriate.

## IV.    The Sheriff's Costs

As the prevailing party on the only claim against him, the Sheriff seeks costs from Plaintiff in the amount of $1,564.20. (Doc. 196). Plaintiff objects to several of the requested costs, including those the Sheriff incurred for mediation.[12] (See Pl.'s Resp. in Opp'n to Costs, Doc. 198). Unless precluded by statute, rule, or court order, prevailing parties are entitled to receive costs under Federal Rule of Civil Procedure 54(d), but the extent to which costs are taxed is prescribed by statute. EEOC v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000). Id. Ordinarily, 28 U.S.C. § 1920 applies to the recovery of taxable costs in civil litigation, but "[s]ection 1988 governs the expenses permitted by a prevailing party in a § 1983 action." Hodges v. Sch. Bd. of Orange Cty., Fla., No. 6:11-CV-135-ORL-36, 2014 WL 6455436, at *14 (M.D. Fla. Nov. 13, 2014) (citing Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1188–89 (11th Cir. 1983)). "[T]he standard for awarding expenses under § 1988 is more generous than that set forth in § 1920, as it encompasses 'all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case[.]'" Id. While mediation is typically not recoverable as a taxable cost under § 1920, it is recoverable under § 1988. Id. at *16 (finding that mediation fees are the

---

[12] Curiously, Plaintiff opposes the Sheriff's effort to recover mediation costs, but she seeks to recover the same from Destefano. (See Doc. 91-1 at 29; Doc. 90-2 at 4).

type of expense reasonably incurred during the course of litigation).  The Sheriff's motion to tax costs is due to be granted.

### V.    Plaintiff's Attorney's Fees and Costs

The remaining issues are whether Plaintiff's fees and court costs should be taxed against Destefano.  Plaintiff seeks attorney's fees under both the DPPA and 42 U.S.C. § 1988 in the amount of $153,787.00 and costs in the amount of $4,277.44.  (Pl.'s Mot. For Att'ys' Fees, Doc. 190, at 2).  Destefano objects, arguing among other grounds that Plaintiff is not a prevailing party.  (Doc. 197).  For the reasons set forth below, Plaintiff is awarded $15,379 in attorney's fees and $4,277.44 in costs.

Fees are available to prevailing parties in actions brought under both the DPPA and 42 U.S.C. § 1983.  The DPPA provides for an award of reasonable attorney's fees and litigation costs to prevailing parties.  18 U.S.C. § 2724(b)(3).  Likewise, 42 U.S.C. § 1988 contains a similar provision for the benefit of prevailing parties in § 1983 actions.  Because the DPPA creates a statutory right to privacy that is enforceable under § 1983, and because "the relief offered by the DPPA and [§] 1983 [is] complementary," the same analytical framework applies to attorney's fees under §1988 and the DPPA.  See Collier, 477 F.3d at 1311.

The first step in this analysis is to determine whether Plaintiff is the prevailing party in this lawsuit.  Generally, plaintiffs who succeed on a significant issue that achieves some benefit intended by the suit may be considered prevailing parties for attorney's fees purposes.  Farrar v. Hobby, 506 U.S. 103, 109 (1992).  A plaintiff prevails when she "obtain[s] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." Id. at 111 (internal citation

omitted).   "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying defendant's behavior in a way that directly benefits the plaintiff."   Id. at 111-12.   Here, Plaintiff is the prevailing party because her award of $2,500 in liquidated damages indeed alters the legal relationship between the parties, benefitting Plaintiff.   See id.

Once the prevailing party is established, a fee is tentatively "'calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"   Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cty., 278 F. Supp. 2d 1301, 1309 (M.D. Fla. 2003) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).   The product is then subject to upward or downward adjustment based on other considerations, including the degree of success achieved.   Id.   But, a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."   Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).   On the other hand, if plaintiff "'achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.'"   Andrews v. United States, 122 F.3d 1367, 1375 (11th Cir. 1997) (quoting Hensley, 461 U.S. at 440).

"[This] principle is routinely applied in cases where plaintiffs have proven a violation of a constitutional right but failed to achieve the full measure of the success sought."   Villano v. City of Boynton Beach, 254 F.3d 1302, 1306 (11th Cir. 2001).   "'Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.'"   Farrar, 506 U.S at 114 (alteration in original) (quoting City of Riverside v. Rivera, 477 U.S. 561, 585 (1986)).   For example, where a civil rights plaintiff

is seeking damages but merely receives an award of nominal damages, "the only reasonable fee is usually no fee at all." Id. at 115. This is so because, although an award of nominal damages establishes that plaintiff has vindicated his or her constitutional right, it also highlights the "failure to prove an essential element of [her] claim for monetary relief" such as an "actual, compensable injury." Id.

In addition to weighing a plaintiff's success as to the monetary relief sought, a court must also consider whether the result was a vindication of public interests. See Villano, 254 F.3d at 1306. Particularly, courts need "to account for the vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right." Id. at 1308. When there is a spillover benefit to the public, the court may give that benefit principal significance in calculating a reasonable fee award. Popham v. City of Kennesaw, 820 F. 2d 1570, 1580 (11th Cir. 1987).

These factors come into play in assessing Plaintiff's request for fees in this case. As noted, Plaintiff sought liquidated damages in the amount of $252,500, (Doc. 184 at 3), and actual damages well in excess of a million dollars, (Am. Compl. at 17, 29). While Plaintiff failed to prove any actual injury, her lawsuit resulted in a single liquidated damages award of $2,500. By any measurement, failing to establish an essential element of a claim worth in "excess of one million dollars" in compensatory damages and receiving liquidated damages of $2,500—an amount more than 100 times less than the $252,500 sought—is by no means a successful result. While the DPPA allows for a liquidated damages award of $2,500 for its violation, it does not follow that Plaintiff is entitled to full attorney's fees on

15

every issue litigated at trial, including time spent litigating actual damages. Plaintiff's award of liquidated damages merely recognizes that Destefano violated the DPPA as a matter of law—an issue that was not in dispute. In fact, the award of $2,500 in liquidated damages is analogous to an award of nominal damages—which, as discussed above, usually warrants "no fee at all." And, even aside from the similarity between a minimal liquidated damages award and an award of nominal damages, Plaintiff's $2,500 award, as compared to the amount of damages sought, heavily favors an overall reduction in the amount of attorney's fees.

Plaintiff's request is not buttressed by evidence or argument that there was a public benefit flowing from this lawsuit. While the DPPA does proscribe mere improper access of driver's license records, the true purposes of the DPPA are preventing crime and giving people control over businesses obtaining and using private data for marketing purposes. See Schmidt, 361 F. Supp. 2d at 1354. Plaintiff established that Destefano violated the DPPA by accessing and viewing Plaintiff's data, but there was no credible evidence that Destefano ever made an attempt to use or otherwise disclose Plaintiff's data; and, the jury determined that Plaintiff was not harmed by Destefano's viewing her personal information. So, the lawsuit seems to have vindicated Plaintiff's personal interest in recovering a liquidated damage award rather than a broad public interest in preventing widespread use and disclosure of private information.

Plaintiff submitted a forty-nine page document itemizing every fee incurred during litigation. (Doc. 190-1). Where there is a voluminous fee application submitted by a prevailing party, an hour-by-hour review of the fees is not required. Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). In fact, given a voluminous application, the Eleventh

Circuit has approved the "utility of across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." Id. Plaintiff's forty-nine page document qualifies as voluminous; therefore, the court will apply an across-the-board percentage cut to reflect the foregoing discussion. Given the fact that Plaintiff's lawsuit resulted in an award of 0% of her requested $1 million in compensatory damages, 1% of her requested $252,500, and at most a minimal spill-over benefit for the public, a reasonable attorney's fee incurred by Plaintiff in litigating this case is 10% of $153,787, or $15,379.

Finally, after review of Plaintiff's application for an award of costs, I find the request reasonable and the award of such costs consistent with the analysis described above.[13] Plaintiff is entitled to recover costs from Destefano in the amount of $4,277.44.

## VI.   Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.      Plaintiff's Motion for Judgment as a Matter of Law as to Plaintiff's claims against Destefano under the DPPA (Count I) and 42 U.S.C. § 1983 (Count II) is **GRANTED**.

2.      Destefano's Motion for Judgment as a Matter of Law as to Plaintiff's claims against Destefano under the DPPA (Count I) and 42 U.S.C. § 1983 (Count II) is **DENIED**.

---

[13] Destefano argues that Plaintiff is required to submit invoices to account for each of her requested taxable costs. (Destefano's Resp. in Opp'n to Costs, Doc. 197, at 17-18). "The party seeking an award of expenses bears the burden of submitting a request that enables the court to determine what expenses were incurred by the party and the party's entitlement to an award of those expenses." Hodges, 2014 WL 6455436, at *14 (citing Loranger, 10 F.3d at 784.) "Failure to provide sufficient detail or supporting documentation verifying the expenses incurred can be grounds for denial of those unexplained expenses." Id. Here, Plaintiff submitted both an affidavit of Plaintiff's counsel Sherri K. Dewitt (Doc. 190-2, at 4), and a document accounting for each taxable cost. While the document contains Plaintiff's taxable costs scattered throughout a forty-nine page document containing both costs and attorney's fees, such documentation, along with the affidavit of Ms. Dewitt, provides sufficient detail to sustain an award of costs.

3.      The Sheriff's Motion for Judgment as a Matter of Law as to Plaintiff's claim against him under 42 U.S.C. § 1983 (Count III) is **GRANTED**.

4.      Plaintiff is **AWARDED** $2,500 in liquidated damages under 18 U.S.C. § 2724 against Destefano.

5.      The Sheriff's Motion to Tax Costs (Doc. 196) is **GRANTED**.  The Sheriff is **AWARDED** costs in the amount of $1,564.20.

6.      Plaintiff's Motion for an Award of Costs, Including Reasonable Attorney's Fees (Doc. 190) is **GRANTED** in part and **DENIED** in part.  Plaintiff is **AWARDED** attorney's fees and costs in the amounts of $15,379 and $4,277.44, respectively.

7.      The Clerk is **DIRECTED** to enter a judgment providing that Plaintiff Teresa Ann Ela takes nothing on her claims against Defendant Jerry L. Demings; that Defendant Jerry L. Demings, in his official capacity as Orange County Sheriff, recovers from Plaintiff Teresa Ann Ela costs of $1,564.20; and that Plaintiff Teresa Ann Ela recovers from Defendant Kathleen Destefano, a/k/a Kathleen Ela, the sum of $22,156.44,[14] for all of which let execution issue.

8.      After entry of judgment, the Clerk is **DIRECTED** to close this case.

**DONE** and **ORDERED** in Orlando, Florida, on December 2, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

[14] The sum of $22,156.44 includes Plaintiff's awards of $2,500 in liquidated damages, $15,379 in attorney's fees, and $4,277.44 in costs.