**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

THERESA ANN ELA,

        Plaintiff,

v.                                Case No: 6:13-cv-491-Orl-28KRS

KATHLEEN DESTEFANO, JERRY L.
DEMINGS, JOHN DOES 1-30, JANE
DOES 1-30 and ORANGE COUNTY,
SHERIFF DEPARTMENT,

        Defendants.

## ORDER

Following a jury trial resulting in a verdict, Plaintiff Theresa Ann Ela filed a Motion for New Trial and to Alter or Amend the Judgment (Doc. 201). In her Motion, Plaintiff is seeking (i) a new trial under Federal Rule of Civil Procedure Rule 59(a) because I allegedly did not instruct the jury properly on how to determine damages, and (ii) an order pursuant to Rule 59(e) increasing her liquidated damages award from $2,500 to her originally requested $252,500 and increasing her attorney's fees award based on her alleged success and vindication of public interests. As set forth below, Plaintiff's motion is denied in all respects.

**I.**      **Background**

Plaintiff sued Defendant Kathleen Destefano, an Orange County deputy sheriff, under the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–2725 ("the DPPA"), and 42

U.S.C. § 1983[1] for her acts of improperly accessing and viewing Plaintiff's personal information in driver's license databases. (Am. Compl., Doc. 82). Plaintiff also sued Jerry L. Demings in his official capacity as the Sheriff of Orange County for allegedly failing to supervise and train his deputies on the proper use of driver's license databases. (Am. Compl.). The case proceeded to trial before a jury, (Mins., Docs. 167–68, 173, 178), and at the conclusion of the parties' cases-in-chief I granted the Sheriff's motion for judgment as a matter of law on the only claim against him.[2] (See Orders, Docs. 176 & 199). With Destefano as the only remaining Defendant, I instructed the jury regarding the DPPA[3] and provided a verdict form with three interrogatories. (Jury Verdict, Doc. 180). In response to the first interrogatory, the jury found that Destefano violated the DPPA 101 times, and in response to the second, found that Destefano's acts did not cause Plaintiff to suffer any damages. (Id.). Therefore, the jury did not reach the third interrogatory, which asked what amount of compensable damages was attributable to Destefano's conduct. (Id.).

After the trial, Plaintiff and Destefano filed memoranda and presented oral argument addressing how much liquidated damages Plaintiff should be awarded under the DPPA. (Docs. 184–86). The DPPA provides that upon violation "[t]he court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C. § 2724(b)(1). Plaintiff sought $252,500 in liquidated damages—$2,500 for each of Destefano's 101 violations. (Doc. 184). Plaintiff also sought attorney's fees and costs in

---

[1] In Collier v. Dickinson 477 F.3d 1306, 1311 (11th Cir. 2007), the Eleventh Circuit Court of Appeals held that the DPPA creates a statutory right to privacy that can be enforced both on its own terms and through § 1983. Plaintiff brought her claims under both statutes.
[2] My ruling as to the Sheriff is not at issue.
[3] During trial, Plaintiff agreed to seek damages only under the DPPA and not under § 1983.

2

the amounts of $153,787 and $4,227.44, respectively. (Pl.'s Mot. Att'y's Fees, Doc. 190, at 2). Ultimately, I awarded Plaintiff $2,500 in liquidated damages; $15,379 in attorney's fees—ten percent of her requested amount; and $4,277.44 in costs.[4] (Order, Doc. 199). Plaintiff then filed the instant Motion for New Trial and to Alter or Amend the Judgment (Doc. 201), and Destefano responded, (Def.'s Resp. in Opp'n, Doc. 202). Plaintiff is now seeking (i) a new trial based on allegedly incomplete jury instructions and (ii) an order increasing the amount of her award of liquidated damages and attorney's fees.

II. Discussion

    A.    **Motion for a New Trial**

        1.    *Legal Standard*

A district judge, upon motion of a party, "may . . . grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). "Motions for new trial on the basis of erroneous and prejudicial jury instructions are within the district court's discretion . . . ." Gowski v. Peake, 682 F.3d 1299, 1310 (11th Cir. 2012). "A party may assign as error . . . a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected." Fed. R. Civ. P. 51(d)(1). Where error is properly assigned under Rule 51—i.e., where the party properly objects—a new trial may be granted "'[i]f the instructions do not accurately reflect the law, and the instructions as a whole do not correctly instruct the jury so that [the court is] left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" Starbuck v. R.J. Reynolds Tobacco Co., 102 F. Supp. 3d 1281, 1308 (M.D.

---

[4] Due to a scrivener's error, I erroneously awarded Plaintiff $4,277.44 in costs—$50 more than her requested $4,227.44. This error was discovered in the course of considering the instant motion. An amended judgment will be entered to correct this scrivener's error.

3

Fla. 2015) (first alteration in original) (quoting SEC v. Yun, 327 F.3d 1263, 1281 n.39 (11th Cir. 2003)).

   2.   *Analysis*

Plaintiff argues that "the Court erroneously usurped the determination of liquidated damages from the jury" and therefore violated her Seventh Amendment right to a jury trial. (Pl.'s Mot. New Trial at 7). The DPPA provides that upon a violation "[t]he court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C. § 2724(b). Plaintiff's argument stems from the absence of an instruction to the jury regarding the availability of liquidated damages, and Plaintiff asserts that I improperly assessed those damages in my discretion.

There was no error in the instructions and verdict form provided to the jury. The only Eleventh Circuit Court of Appeals decision on the issue of liquidated damages under the DPPA states that "the district court, in its discretion, may fashion what it deems to be an appropriate award . . . . [and a]mong the options . . . is the option to award 'actual damages, but not less than liquidated damages in the amount of $2,500.'" Kehoe v. Fid. Fed. Bank & Tr., 421 F.3d 1209, 1216 (11th Cir. 2005) (quoting 18 U.S.C. § 2724(b)). Throughout the litigation, all parties agreed that Kehoe provided the Court discretion in fashioning an award under the DPPA, including determining the amount of liquidated damages. Moreover, of the only two decisions addressing the right to a jury trial under the DPPA, one does not address the issue presented here and the other is in accord with this Court's decision. See Pichler v. UNITE, 542 F.3d 380, 390 (3d Cir. 2008); Pichler v. UNITE, 646 F. Supp. 2d 759, 768 (E.D. Pa. 2009) ("Neither the Seventh Amendment nor the DPPA requires that a jury decide whether to impose liquidated damages after a court has granted summary judgment on the issue of liability." (footnote omitted)). Because there was no

4

error, it follows that there was no miscarriage of justice in not submitting the issue of liquidated damages to the jury.

Moreover, even if the failure to instruct the jury on the issue of liquidated damages amounted to error, such error was invited by Plaintiff. "[W]hen a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result." United States v. Frank, 599 F.3d 1221, 1240 (11th Cir. 2010). Simply "failing to object does not trigger the doctrine of invited error"; indeed, even ambiguous statements do not constitute invited error. United States v. Dortch, 696 F.3d 1104, 1112 (11th Cir. 2012) (finding that a pro se party did not invite error where he stated "I don't think so, Your Honor" in response to the court's question about whether he would need to review the instructions with the court again at a later time). Rather, to invite error a party must affirmatively approve of the court's proposed instructions. See United States v. Fulford, 267 F.3d 1241, 1247 (11th Cir. 2001) (finding invited error where counsel stated "the instruction is acceptable to us"); Costa v. Sam's E., Inc., Civ. Action No. 11-0297-WS-N, 2012 WL 5386921, at *12 (S.D. Ala. Oct. 31, 2012) (finding invited error where counsel stated "we're okay with everything that you've given us"), aff'd, 524 F. App'x 548 (11th Cir. 2013). If it was error not to instruct the jury on liquidated damages, that error was invited.

Counsel for both parties drafted and agreed to the substance of the jury instructions and verdict form.[5] Prior to trial, Plaintiff proposed a verdict form that included an interrogatory requiring the jury to "determine the amount of statutory liquidated damages awardable to plaintiff . . . by multiplying $2,500.00 by the [total number of times Destefano

---

[5] Counsel for Destefano made the only objection to the final version of the verdict form because he opposed charging the jury with determining how many times Destefano violated the DPPA.

5

violated the DPPA]." (Proposed Verdict Form, Doc. 159, at 5). However, during the Final Pretrial Conference Plaintiff's counsel did not object to the exclusion of that language and, as the Conference went on, argued in favor of excluding it. When I explained that it was my understanding that the jury would determine how many times Destefano violated the DPPA and the amount of actual damages, Plaintiff's counsel agreed and further stated that it would be completely in my discretion as to what liquidated damages were awarded. Moreover, when I went over the jury instructions and verdict form with the parties after their cases-in-chief, Plaintiff's counsel stated that the final verdict form was "agreeable to us." Because Plaintiff invited the error complained of and affirmatively approved the Court's instructions, Plaintiff is not entitled to a new trial on this ground.

    **B.**    **Motion to Alter or Amend the Judgment**

        *1.*    *Legal Standard*

"The only grounds for granting [a Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal quotation and citation omitted). "A prior decision of this Court will not be amended without a showing of 'clear and obvious error where the "interests of justice" demand correction.'" Stewart v. Hooters of Am., Inc., No. 8:04-CV-40-T-17MAP, 2008 WL 4534030, at *2 (M.D. Fla. Oct. 6, 2008) (quoting Am. Home Assurance Co. v. Glenn Estess & Assoc., 763 F.2d 1237, 1239 (11th Cir.1985)). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters[ or to] raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir.2005).

6

### 2. Analysis

Plaintiff argues that I manifestly erred in awarding only $2,500 in liquidated damages and only ten percent of her requested attorney's fees. As a preliminary matter, Plaintiff's motion impermissibly rehashes the same arguments she made in her earlier filings and at oral argument, (see Pl.'s Mem. on Liquidated Damages, Doc. 184; Pl.'s Mot. for Att'y's Fees, Doc. 190), and on which this Court has previously ruled, (Order, Doc. 199, at 11, 15–17). Nonetheless, I will elaborate on my prior Order.

Plaintiff first contends that I have no discretion to grant a liquidated damages award less than her requested $252,500—$2,500 for each violation of the DPPA. (Pl.'s Mot. New Trial at 10). However, in light of the language in Kehoe instructing that "the award of any damages is permissive and discretionary," Plaintiff fails to show that it is a "clear and obvious error" to award less than $2,500 per violation of the DPPA. Kehoe, 421 F.3d at 1216; see also Pichler v. UNITE, 457 F. Supp. 2d 524, 530 (E.D. Pa. 2006) ("[M]ultiple violations with respect to a single plaintiff do not automatically entitle that plaintiff to a separate statutory damages award for each violation. The DPPA does not specify *how* statutory damages should be calculated with respect to each plaintiff. We may have the discretion to stack the statutory damages awards as plaintiffs request, but whether we should do so is quite another matter." (emphasis in original)), aff'd in part, vacated in part, 542 F.3d 380 (3d Cir. 2008). Because Plaintiff fails to show a "clear and obvious error" in light of the scant law on this issue, this argument is rejected.

Plaintiff next argues that I gave "extraordinary deference to the amount of damages awarded in determining Plaintiff's 'success'" and failed to give the appropriate weight to the public benefit advanced by civil rights litigation. (Pl.'s Mot. New Trial at 12–13). Plaintiff correctly states that "where a plaintiff has obtained excellent results, his attorney should

7

recover a fully compensatory fee" and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." (Id. at 11 (quoting City of Riverside v. Rivera, 477 U.S. 561, 569 (1986))). However, Plaintiff did not achieve excellent results. Other than receiving an award of $2,500 in liquidated damages for an issue not actually in dispute, Plaintiff did not receive injunctive, punitive, or compensatory relief. Plaintiff's single award of liquidated damages merely recognized that Destefano violated the DPPA as a matter of law. Indeed, Destefano admitted in her deposition taken on February 19, 2015, that she accessed and viewed Plaintiff's personal information for an improper purpose under the DPPA.[6] (Dep. of Kathleen Destefano, Doc. 108-3, at 20–21, 44–46, 57–59).[7] Based on that admission, Plaintiff would have been entitled as a matter of law to her inevitable award of $2,500 without any further litigation. Plaintiff, however, unsuccessfully pressed forward in hopes of a favorable damage award by a jury "in excess of One Million ($1,000,000.00) Dollars."[8] (Am. Compl. at 17, 20).

I also reject Plaintiff's argument that I failed to properly weigh the public benefit of her successful lawsuit. "There is no room to doubt that a court may reduce a § 1988 award when the degree of success obtained is limited, even when a plaintiff obtains a favorable jury verdict that a constitutional right was violated."[9] Villano v. City of Boynton Beach, 254

---

[6] Destefano's admission took place over a month before the deadline for filing dispositive motions and six months before the trial term.

[7] The page numbers of the deposition refer to the individual pages of the deposition transcript rather than the pages of the document in the docket.

[8] This undermines Plaintiff's argument that it was Destefano who "rigorously litigated all allegations against her." (Pl.'s Mot. New Trial at 12).

[9] "Because the DPPA creates a statutory right to privacy that is enforceable under § 1983, and because the relief offered by the DPPA and § 1983 is complementary, the same analytical framework applies to fees sought under § 1988 and the DPPA." (Order, Doc. 199, at 13 (internal quotations omitted)). Additionally, I note that the cases cited in the text address the public benefit achieved through vindicating constitutional rights as

F.3d 1302, 1306 (11th Cir. 2001). However, "a court must be careful not to place 'undue emphasis on the modest money damages that were found by the jury' because successful civil rights actions vindicate a public interest.'" Id. (quoting Williams v. Thomas, 692 F.2d 1032, 1038 (5th Cir. 1982)). Specifically, "the court needs to account for the vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right."[10] Id. at 1308.

The Eleventh Circuit has noted that succeeding against a municipal defendant, as opposed to an individual defendant, "carries legal significance because vindicating a constitutional right against a municipal defendant heightens the public benefit created by a lawsuit." Villano, 254 F.3d at 1306; see also, City of Riverside, 477 U.S. at 574–76 (stating that a successful lawsuit against a municipal police department helped stop the institutional mistreatment of Chicanos by the city's policemen). Specifically, in Villano, the Eleventh Circuit found error where a district court failed to properly weigh the fact that the plaintiff recovered not only against an individual police officer but also against the municipal defendant. Villano, 254 F.3d at 1307. On the other hand, in another case the Eleventh

---

opposed to federal statutory rights—the DPPA creates the latter. I need not and do not decide whether the public benefit from vindicating federal statutory rights is the same as the benefit from vindicating rights protected under the Constitution. I err on the side of caution in treating them the same.

[10] In Popham v. City of Kennesaw, 820 F.2d 1570, 1580 (11th Cir. 1987), the Eleventh Circuit noted that the district court "would have erred had it ignored the fact that [a plaintiff] benefited the public interest by vindicating [her] constitutional rights." Here, however, Plaintiff acknowledges that I did not ignore the potential benefits to the public from her successful lawsuit. (Pl.'s Mot. New Trial at 14 ("[T]his Court manifestly erred because it failed to give *abundant* weight to the vindication of Plaintiff's . . . rights." (emphasis added)).

Circuit found no abuse of discretion when a district court reduced a fee by two-thirds where the lawsuit did not result in any identifiable spillover benefit to the public, did not challenge institutional conduct, and did not result in any recovery from a municipal defendant. Popham v. City of Kennesaw, 820 F.2d 1570, 1580–81 (11th Cir. 1987). Notably, even succeeding against a municipal defendant on a civil rights claim does not always amount to "excellent" results as a matter of law. See Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 347 F. Supp. 2d 1310, 1323 (N.D. Ga. 2004) (finding that even though the plaintiffs achieved a successful outcome against a municipal defendant, which conferred "significant public benefit, . . . Plaintiffs' success f[ell] just short of being an 'excellent' result in the context of the litigation as a whole"), aff'd, 442 F.3d 1283 (11th Cir. 2006).

Here, despite initially seeking over $1,000,000 in damages and various forms of injunctive relief against Sheriff Demings—the only municipal defendant in the case—Plaintiff failed to establish that the Sheriff did anything wrong.[11] (See Order, Doc. 199). Even though Plaintiff failed on her only claim against the Sheriff, she argues that her suit still provided public benefits because "had Plaintiff not brought this suit and successfully vindicated her rights, it is very likely that [Destefano], as well as possibly other Orange County Sheriff's Deputies, would have continued to obtain Plaintiff's personal information,

---

[11] It is worth noting that even if Plaintiff did succeed on her claim against the Sheriff, her requested injunctive relief sought only a personal benefit rather than relief that would benefit the public. (Am. Compl. at 24 ("WHEREFORE, Plaintiff . . . prays for judgment against [Defendant Sheriff Demings . . . providing a]n injunction, permanently enjoining Defendant Demings . . . from allowing or providing for viewing of *Plaintiff's* private information in violation of the DPPA . . . [and] allowing *Plaintiff* to use a post-office box in place of an address on her Florida Driver's License." (emphasis added)).

or other members of the public's information, in violation of the DPPA." (Pl.'s Mot. New Trial at 15).

This argument is unpersuasive for two reasons. First, that Plaintiff's lawsuit warded off additional DPPA intrusions of her own personal information is plainly a personal benefit rather than a public benefit. Second, any argument that the lawsuit provided public benefit by affecting the conduct of the Sheriff's deputies is, at best, speculative. Plaintiff has not helped stop the institutional mistreatment by the Sheriff's deputies toward the public at large because she has not proven that any such institutional mistreatment ever existed. (Order, Doc. 199 (finding that there was not widespread abuse of the driver's license databases by the Orange County Sheriff's Office)). Plaintiff's vindication of her rights as to Destefano and the resulting $2,500 in monetary relief provides a personal benefit. Any public benefit derived from the lawsuit is, at most, minimal. As such, Plaintiff has failed to show a manifest error of law in this Court's prior Order awarding liquidated damages and attorney's fees.

### III. Conclusion

Plaintiff fails to show a basis for her requested post-judgment relief. However, due to a scrivener's error with regard to the amount of costs in the Court's prior Order (Doc. 199), the Court will sua sponte correct that Order and direct entry of an amended judgment to reflect the correct amount of costs that Plaintiff shall recover from Destefano. Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for New Trial and to Alter or Amend the Judgment (Doc. 201) is **DENIED**.

2. The Order entered on December 2, 2015 (Doc. 199) is **amended** to reflect that Plaintiff is awarded costs against Defendant Destefano in the amount of $4,227.44

instead of $4,277.44. This reduces the amount of Plaintiff's judgment against Destefano by $50.00.

    3.    The Judgment entered on December 3, 2015 (Doc. 200) is **VACATED**. The Clerk is directed enter an Amended Judgment providing that Plaintiff Teresa Ann Ela takes nothing on her claims against Defendant Jerry L. Demings; that Defendant Jerry L. Demings, in his official capacity as Orange County Sheriff, recovers from Plaintiff Teresa Ann Ela costs of $1,564.20; and that Plaintiff Teresa Ann Ela recovers from Defendant Kathleen Destefano, a/k/a Kathleen Ela, the sum of $22,106.44,[12] for all of which let execution issue.

    **DONE** and **ORDERED** in Orlando, Florida, on March 7, 2016.

                                          JOHN ANTOON II
                                          United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[12] The sum of $22,106.44 includes Plaintiff's awards of $2,500.00 in liquidated damages, $15,379.00 in attorney's fees, and $4,227.44 in costs.